**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |
|---|---|
| MONIKA MAHABARE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 20-cv-02849-LKG |
| v. ) | |
| ) | Date:  November 30, 2021 |
| SUNTRUST BANK, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

**I.    INTRODUCTION**

Plaintiff, Monika Mahabare, brings this civil action against defendants SunTrust Bank ("SunTrust"), Truist Bank ("Truist")[1] and Bank of America ("Bank of America"), alleging conversion, improper payment, breach of contract and negligence claims pursuant to the Maryland Commercial Code ("Maryland UCC") and common law.  *See generally* Am. Compl., ECF No. 20.  Defendants have moved to dismiss Count I (conversion), Count III (breach of contract), Count IV (negligence) and Count V (negligence) of the amended complaint, pursuant to Fed. R. Civ. P. 12(b)(6).  Def. Mot., ECF No. 25; *see also* Def. Mem., ECF No. 25-1.  No hearing is necessary to resolve the motion.  L.R. 105.6 (D. Md. 2021).  For the reasons that follow, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** defendants' partial motion to dismiss.

**II.    FACTUAL AND PROCEDURAL BACKGROUND**

    **A.    Factual Background**

In this action, plaintiff, Monika Mahabare, alleges that the defendants improperly paid and/or accepted a cashier's check intended to pay off her mortgage after the cashier's check was

---

[1] Truist is the successor to SunTrust.  Def. Mem. at 1 n.1.

1

stolen, in violation of the Maryland UCC and common law.  *See generally* Am. Compl.  As relief, plaintiff seeks to recover monetary damages and costs from the defendants.  *Id.* at 7-10.

As background, plaintiff is a Maryland resident and the borrower under a mortgage loan serviced by Cenlar Central Loan Administration & Reporting ("Cenlar").  *Id.* at ¶¶ 2, 10.  Defendants SunTrust, Truist and Bank of America are banks with principal places of business in North Carolina.  *Id.* at ¶¶ 3-5.

Plaintiff alleges that on August 23, 2018, she purchased two cashier's checks, totaling $164,000, to satisfy the remaining balance on her Cenlar mortgage loan.  *Id.* at ¶ 12.  Plaintiff purchased one of the cashier's checks in the amount of $140,000 from Bank of America, and this check was made payable to "CENLAR ACC# 0057503252" (the "Bank of America Cashier's Check").  *Id.* at ¶ 13.

On August 25, 2018, plaintiff placed an envelope containing the Bank of America Cashier's Check and a Cenlar payment coupon into a United States Postal Service ("USPS") mailbox.[2]  *Id.* at ¶ 14.  Plaintiff alleges that, sometime thereafter, two unidentified individuals broke into the USPS mailbox and stole the envelope containing the Bank of America Cashier's Check.  *Id.* at ¶ 15.

These individuals subsequently opened a bank account at SunTrust under the name "Cenlar Construction, LLC" and they deposited the Bank of America Cashier's Check into that account.  *Id.* at ¶ 16.  Thereafter, Bank of America honored the Bank of America Cashier's Check and SunTrust credited the "Cenlar Construction LLC" account with these proceeds.  *Id.* at ¶ 18.

B.    **Procedural History**

Plaintiff commenced this action on October 1, 2020.  Compl., ECF No. 1.  On June 2, 2021, plaintiff filed an amended complaint.  Am. Compl.

On June 30, 2021, defendants filed a partial motion to dismiss the amended complaint, and a memorandum in support thereof.  Def. Mot; Def. Mem.  On July 13, 2021, plaintiff filed a

---

[2] Plaintiff also placed an envelope containing another cashier's check purchased from TD Bank into the USPS mailbox. Am. Compl. at ¶ 14.  This cashier's check was also stolen.  *Id.* at ¶ 15.

2

response in opposition to defendants' motion. Pl. Resp., ECF No. 26. On July 27, 2021, defendants filed a reply in support of their motion. Def. Reply, ECF No. 27.

Defendants' partial motion to dismiss the amended complaint having been fully briefed, the Court resolves the pending motion.

## III.    LEGAL STANDARDS
### A.    Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible when "the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). When evaluating the sufficiency of a plaintiff's claims under Fed. R. Civ. P. 12(b)(6), the Court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *Nemet Chevrolet, Ltd.. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005) (citations omitted). But, the complaint must contain more than "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement . . . ." *Nemet Chevrolet*, 591 F.3d at 255. And so, the Court should grant a motion to dismiss for failure to state a claim if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *GE Inv. Private Placement Partners II, L.P. v. Parker,* 247 F.3d 543, 548 (4th Cir. 2001) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.,* 492 U.S. 229, 249-50 (1989)).

## IV.    ANALYSIS

Defendants have moved to dismiss Counts I, III, IV and V of the amended complaint, pursuant to Fed. R. Civ. P. 12(b)(6). Def. Mot.; Def. Mem. Specifically, defendants argue that the Court should dismiss plaintiff's conversion claim in Count I, because plaintiff does not have standing to pursue this claim under Section 3-420(a) of the Maryland UCC. *See* Def. Mem. at 5-6; *see also* Def. Reply at 2-4. Defendants also argue that the Court must dismiss plaintiff's common law negligence and breach of contract claims in Counts III, IV and V, because these claims have been displaced by the provisions of the Maryland UCC. *See* Def. Mem. at 7-11; *see*

3

*also* Def. Reply at 4-8.  And so, defendants request that the Court dismiss Counts I, III, IV and V of the amended complaint.  Def. Mem. at 11.

Plaintiff counters in her response in opposition to defendants' motion that she may pursue her conversion claim against Truist, because she is the remitter of the Bank of America Cashier's Check.  *See* Pl. Resp. at 4-7.  In addition, plaintiff argues that she has asserted plausible common law claims for negligence and breach of contract against defendants and that the Maryland UCC does not displace these claims.  *Id.* at 7-11.  And so, she requests that the Court deny defendants' motion.  *Id.* at 11.

For the reasons that follow, plaintiff has standing to bring her conversion claim against Truist.  Plaintiff may not, however, pursue her common law negligence and breach of contract claims against the defendants, because these claims have been displaced by the Maryland UCC.  And so, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** defendants' partial motion to dismiss and **DISMISSES** Counts III, IV and V of the amended complaint.

  A. **Plaintiff Has Standing To Bring A Conversion Claim Against Defendant Truist**

As an initial matter, the Court is satisfied that plaintiff has standing to bring a conversion claim against defendant Truist.  It is undisputed that the Bank of America check upon which plaintiff bases her conversion claim is a cashier's check that plaintiff purchased from Bank of America in August 2018, and that Cenlar is the payee for that check.  *See* Def. Mot. at 2; Pl. Resp. at 3 ("The Bank of America [Cashier's] Check was made payable to 'CENLAR ACC# 0057503252.'").  The Maryland UCC defines a "remitter" of an instrument as "a person who purchases an instrument from its issuer if the instrument is payable to an identified person other than the purchaser."  Md. Code Ann., Com. Law § 3-103(11).  In this case, it is undisputed that plaintiff purchased the Bank of America Cashier's Check from the issuer of that check, Bank of America, and that the Bank of America Check is made payable to someone other than plaintiff— namely, Cenlar.  Def. Mot. at 2; Pl. Resp. at 2.  Given this, plaintiff is the remitter of the Bank of America Cashier's Check, rather than the issuer of the Bank of America Cashier's Check as defendants argue in their partial motion to dismiss.  Md. Code Ann., Com. Law § 2-103(11); Def. Mot. at 4.

4

Plaintiff may bring a conversion claim against defendant Truist as the remitter of the Bank of America Cashier's Check.  As defendants correctly observe, Section 3-420(a) of the Maryland UCC provides, in pertinent part, that "[a]n action for conversion of an instrument may not be brought by . . . the *issuer or acceptor* of the instrument or . . . a payee or indorsee who did not receive delivery of the instrument . . . ."  Md. Code Ann., Com. Law § 3-420(a) (emphasis added).  And so, Section 3-420(a) prohibits a conversion claim brought by the issuer of a check.  *Id*.

This provision does not, however, prohibit a *remitter* from pursuing a conversion claim.  In fact, the Official Comments to the Maryland UCC are instructive in understanding why a remitter may pursue a conversion claim regarding a cashier's check that he or she purchased under certain circumstances.  In this regard, Comment Two to Section 3-201 explains that the remitter of a cashier's check "is the owner of the check until ownership is transferred to [the payee] by delivery."  Md. Code Ann., Com. Law § 3-201 cmt. 2.  Comment One to Section 3-420 further clarifies that the "payee receives delivery when the check comes into the payee's possession, as for example when it is put into the payee's mailbox."  Md. Code Ann., Com. Law § 3-420 cmt. 1.  And so, these comments make clear that the remitter of a cashier's check retains an ownership interest in the check until the check is delivered to the payee, thereby permitting a claim of conversion related to that check when the check has not been delivered the payee.

Here, the amended complaint makes clear that plaintiff retains an ownership interest in the Bank of America Cashier's Check, because this check was never delivered to Cenlar.  The amended complaint states that, on August 25, 2018, plaintiff placed an envelope containing the Bank of America Cashier's Check and a Cenlar payment coupon into a USPS mailbox and that the cashier's check was subsequently stolen when two unidentified individuals broke into the USPS mailbox.  *Id.* at ¶¶ 14-15.  And so, the amended complaint makes clear that the Bank of America Cashier's Check was not delivered to Cenlar.  *Id*.  Given this, plaintiff's ownership interest in this check did not terminate and plaintiff has standing to bring her conversion claim in this case.  *See* Md. Code Ann., Com. Law § 3-210 cmt. 2; *id.* § 3-420 cmt. 1.

The Court's conclusion that, as the remitter of the Bank of America Cashier's Check, plaintiff has standing to pursue her conversion claim is consistent with the existing case law on this issue.  The Court is not aware of any cases where either the United States Court of Appeals

5

for the Fourth Circuit or this Court has directly addressed the issue of whether a remitter of a cashier's check has standing to bring a conversion claim. But, several other courts have addressed this issue and held that the remitter of a cashier's check may bring a conversion claim.

For example, the United States Court of Appeals for the Fifth Circuit has held in *Jones v. Wells Fargo* that a remitter has standing to bring a conversion claim, because the remitter is "the 'true owner'" of the cashier's check. *See Jones v. Wells Fargo, N.A.*, 666 F.3d 955, 962 (5th Cir. 2012) (quoting *Tubin v. Rabin*, 382 F. Supp. 193, 196 (N.D. Tex. 1974)). In that case, the remitter of the cashier's check did not deliver the check to the payees, but rather deposited the check into the business account of another entity. *Id.* at 958. And so, the Fifth Circuit concluded that the remitter could bring a conversion claim, because there was "no evidence of a transfer" of the cashier's check from the remitter to the payees. *Id.* at 960-61.

Similarly, the United States District Court for the District of Connecticut has held that a remitter can bring a conversion claim against a depository bank, when the checks at issue were never transferred to the payee. *See Old Republic Nat'l Title Ins. Co. v. Bank of E. Asia, Ltd.*, 291 F. Supp. 2d 60, 69 (D. Conn. 2003). As defendants correctly observe, the United States Court of Appeals for the Ninth Circuit held in *Lewis v. Telephone Employees Credit Union* that a remitter did not have standing to bring a conversion claim against the paying banks, because the "remitter of a cashier's check . . . does not have rights in an instrument." 87 F.3d 1537, 1552 (9th Cir. 1996). But, *Lewis* is distinguishable from this case, because the check at issue in *Lewis* was actually delivered to the payee. *Id.* at 1552 n.16 (noting that the teller's and cashier's checks were given to messengers sent by the payees). That is not the case here.

Because plaintiff is the remitter of the Bank of America Cashier's Check and she retains a property interest in that check, plaintiff has standing to pursue her conversion claim against Truist in this case. And so, the Court **DENIES** defendants' motion to dismiss Count I of the amended complaint.

B.   The Maryland UCC Displaces Plaintiff's Common Law Claims

Defendants are on stronger footing in arguing that the Court should dismiss plaintiff's common law negligence and breach of contract claims, because these claims have been displaced by the Maryland UCC. Def. Mot. at 7-11. This Court has held that, "when the [Maryland UCC] and the common law both provide a means of recovery, the [Maryland UCC] should displace the

6

common law, because variations in the common law among states destroy the uniformity in commercial transactions sought to be accomplished by the [UCC]." *Titan Custom Cabinets, Inc. v. Truist Bank*, 505 F. Supp. 3d 558, 566 (D. Md. 2020).

The Maryland UCC provides adequate remedies and means of recovery to address plaintiff's common law negligence and breach of contract claims in this action. A careful reading of the amended complaint shows that plaintiff premises her common law negligence and breach of contract claims upon the defendants' alleged failure to exercise ordinary care by honoring the fraudulent endorsement on the Bank of America Cashier's Check. Am. Compl. at ¶¶ 52, 57, 65 (alleging that: (1) defendant Bank of America "breached the contract with [plaintiff] when it paid the [Bank of America] check with the forged endorsement;" (2) defendant Bank of America failed to exercise ordinary care by paying "the payee for an item containing a forged endorsement;" and (3) defendant Truist failed to exercise ordinary care by "accepting" the fraudulently endorsed Bank of America Cashier's Check). The Maryland UCC provides a means of recovery for plaintiff to address such claims.

Notably, Titles 3 and 4 of the Maryland UCC provide a comprehensive statutory scheme for the rights and remedies concerning negotiable instruments and bank deposits and collections, respectively. Indeed, plaintiff bases several counts in the amended complaint on these titles. Am. Compl. at ¶¶ 28-49 (Count I (Section 3-420, conversion) and Count II (Section 4-401, when a bank may charge a customer's account)). On several occasions, this Court has dismissed common law negligence and breach of contract claims when such claims overlap with provisions of the Maryland UCC like the common law claims in this case. *See, e.g.*, *Advance Dental Care, Inc. v. SunTrust Bank*, 816 F. Supp. 2d 268, 270-71 (D. Md. 2011) (finding that the UCC preempted the plaintiff's common law negligence claim, because of "significant overlap between [S]ection 3-420 [conversion] and common-law negligence"); *Mar-Chek, Inc. v. Mfrs. & Traders Co.*, 2019 WL 3067501, at * 7 (D. Md. July 11, 2019) ("Because UCC articles 3, 4 and 4A govern [plaintiff's] ability to seek recourse for the alleged damages it incurred from [defendants'] conduct, [plaintiff's] common law claims [of negligence and breach of contract] are preempted . . . ."); *Silver v. Wells Fargo Bank, N.A.*, 2017 WL 3621235, at *3 (D. Md. Aug. 23, 2017) (finding that the UCC displaced the plaintiff's common law breach of contract and negligence claims, because they had "no independent significance apart from [plaintiff's] UCC claims").

Because the Maryland UCC provides adequate and meaningful remedies and a means of recovery for plaintiff to address the conduct that provides the bases for her common law negligence and breach of contract claims, the Court **GRANTS** defendants' motion to dismiss Counts III, IV and V of the amended complaint. *Advance Dental Care, Inc.*, 816 F. Supp. 2d at 270-71 ("[S]ection 3-420 has effectively subsumed common-law negligence claims."); *Silver*, 2017 WL 3621235, at *3 (dismissing plaintiff's common law breach of contract claim, because it had "no independent significant apart from [plaintiff's] UCC claims").

## V. CONCLUSION

In sum, plaintiff has standing to pursue her conversion claim against Truist. But, plaintiff may not pursue her common law breach of contract and negligence claims against the defendants, because these claims have been displaced by the Maryland UCC.

And so, for the foregoing reasons, the Court:

1. **GRANTS-IN-PART** and **DENIES-IN-PART** defendants' partial motion to dismiss the amended complaint; and

2. **DISMISSES** Counts III, IV and V of the amended complaint.

Defendants shall **ANSWER**, or otherwise respond to, the remaining counts in the amended complaint, on or before **December 28, 2021**.

**IT IS SO ORDERED.**

s/Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge